IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CRIMINAL CASE NO. 1:09-cr-00047-MR-2

| | |
|---|---|
| UNITED STATES OF AMERICA, ) ) Plaintiff, ) ) vs. ) ) BRENTON MICHAEL REINHARDT, ) ) Defendant. ) _____ ) | **O R D E R** |

**THIS MATTER** is before the Court on Defendant's Motion for Compassionate Release/Sentence Reduction Under 18 U.S.C. § 3582 [Doc. 120].

**I.      BACKGROUND**

On August 31, 2009, Brenton Michael Reinhardt ("Defendant") pled guilty to one count of conspiracy to manufacture and possess with intent to distribute methamphetamine, in violation of 21 U.S.C. §§ 841 and 846. [Docs. 1: Indictment; 33: Plea Agreement; 39: Order Accepting Plea]. On November 23, 2010, Defendant was sentenced to 235 months' imprisonment. [Doc. 76]. However, on December 22, 2015, his sentence was reduced to 210 months in response to Amendment 782 to the

Sentencing Guidelines. [Doc. 115]. Defendant is currently incarcerated at United States Penitentiary Atwater ("Atwater"), and his projected release date is January 15, 2032.[1]

On May 28, 2024, Defendant filed his present motion seeking compassionate release. [See Doc. 120]. For grounds, Defendant states that (1) he has been subjected to "cruel and unusual punishment by the BOP," (2) he "suffers from anxiety and stress" regarding his safety in prison, (3) he cannot access health care at Atwater, (4) he has plans to work for his father's HVAC business, to obtain drug and mental health treatment, and to live with his fiancée upon release, (5) he can care for his fiancée's wheelchair-bound mother if released, (6) there have been intervening changes to 21 U.S.C. § 841, (7) the Court did not intend for his sentence to include "risk of severe illness or death brought on by a global pandemic," (8) the "White House is seeking" to decriminalize marijuana and to "pardon federal marijuana offenders," (9) his offenses were non-violent, (10) he has made significant rehabilitative efforts, (11) he is unlikely to reoffend, and (12) the Court had "inherent authority" to run his federal sentence concurrently with his state sentence. [Id.]. In other portions of his motion, Defendant also seems to argue that he is entitled to a reduction in

---

[1] See https://www.bop.gov/inmateloc/ (last visited June 24, 2024).

2

Case 1:09-cr-00047-MR   Document 123   Filed 07/02/24   Page 2 of 16

his sentence based on Amendment 821 to the Sentencing Guidelines. [Id. at 20, 23-28].

## II. DISCUSSION

Section 3582(c)(1)(A), as amended by The First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, 5239 (Dec. 21, 2018), permits a defendant to seek a modification of his sentence for "extraordinary and compelling reasons," if the defendant has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

On March 9, 2024, Defendant submitted a request to his warden arguing that he should be granted compassionate release because he could provide care to his fiancée's mother, who uses a wheelchair. [See Doc. 120-1 at 1]. However, he did not raise any of the other grounds mentioned above. The warden denied Defendant's requested relief on March 19, 2024, but informed Defendant of his right to "appeal through the Administrative Remedy Program." [Id.]. Defendant does not state, and the record does not otherwise indicate, that he commenced such an appeal.

Thus, Defendant has plainly failed to exhaust most, if not all, of the grounds he now raises at the administrative level.

This notwithstanding, the exhaustion requirement "is a non-jurisdictional claim-processing rule[,]" which may be "waived or forfeited." See United States v. Muhammad, 16 F.4th 126, 130 (4th Cir. 2021) ("The district court . . . erred by *sua sponte* dismissing the motion based on the threshold requirement . . . ."). Accordingly, because the Government has not responded to Defendant's present motion, and thus has not invoked the exhaustion requirement, the Court will proceed to address the merits of Defendant's request for compassionate release.

As is relevant here, the Court may reduce a defendant's sentence under 18 U.S.C. § 3582(c)(1)(A)(i) for "extraordinary and compelling reasons" if "such reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). The Court must also consider the factors set forth in 18 U.S.C. § 3553(a), to the extent that such factors are applicable. Id.

Section 1B1.13 of the United States Sentencing Guidelines sets forth the Sentencing Commission's policy statement applicable to compassionate release reductions. See U.S.S.G. § 1B1.13. The Sentencing Commission amended § 1B1.13 effective November 1, 2023, to

address the amendment to § 3582(c)(1)(A) authorizing courts to grant a motion for a sentence reduction based on a defendant's own motion. The amended policy statement sets forth the following list of specified extraordinary and compelling reasons, considered either singly or in combination, that can warrant a reduction in sentence: (1) the defendant's medical condition, including a terminal illness or serious medical or physical condition that substantially diminishes the defendant's ability to provide self-care or requires long-term or specialized medical care; (2) the defendant's age, if the defendant is at least 65 years old, is experiencing a serious deterioration in physical or mental health, and has served at least 10 years or 75 percent of his or her term of imprisonment; (3) certain family circumstances, such as the death or incapacitation of the defendant's child, or where the defendant would be the only available caregiver for an incapacitated family member; (4) where the defendant was a victim of abuse while in custody; (5) any other reasons that are similar in gravity to the aforementioned reasons; and (6) in the event of an "unusually long sentence," the defendant has served at least 10 years of the term of imprisonment, and there has been a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) that would produce a gross disparity between the sentence being served

5

and the sentence likely to be imposed at the time the motion is filed. Id. § 1B1.13(b)(1)-(6).

Defendant first argues that he should be granted early release because he has been subjected to cruel and unusual treatment by the BOP. [Doc. 120 at 4]. Specifically, he contends that he is being "housed in a housing unit/program unit that is segregated from the general population." [Id.]. Defendant explains, however, that he believes he may be targeted for violence by Atwater's "active" inmates, those inmates Defendant describes as having committed "acts of violence" against other inmates that the "general population has deemed as 'no good,'" because he refuses to "participate in the reckless violence." [Id. at 4-6]. Defendant's housing assignment is specifically designed to keep him "segregated from the general population" and from "all of the BOP's 'active' U.S.P. inmates." [Id. at 4-5]. Thus, rather than being cruel, the housing assignment Defendant complains of appears to protect him from the very inmates he believes may wish to harm him. Moreover, Defendant has not provided the Court with any other specific facts or information that would lead it to conclude that

there is anything exceptional about his housing assignment.[2]  See <u>Sadin v. Conner</u>, 515 U.S. 472, 485-86 (1995) (recognizing that it is not "atypical" for inmates to be placed in segregated housing for disciplinary infractions, administrative reasons, or for their own safety).  Accordingly, Defendant's first ground does not justify his early release.

Relatedly, as his second basis, Defendant notes that he suffers from "anxiety and stress" regarding his safety at Atwater.  [Doc. 120 at 6].  However, even "[a]n inmate's *reasonable* fear of assault by other inmates within the BOP is not an extraordinary and compelling reason for compassionate release under 18 U.S.C. § 3582(c)(1)(A)."  <u>United States v. Tate</u>, No. 3:16-cr-00074-MOC, 2022 WL 827256, at *2 (W.D.N.C. Mar. 18, 2022) (emphasis added).  Thus, Defendant's fears for his safety do not warrant compassionate release in this case, particularly given that Defendant has provided *no* evidence regarding any particular threats that would reasonably cause him to fear for his safety.

As his third argument, Defendant baldly states that he cannot access medical care at Atwater.  [Doc. 120 at 9].  However, Defendant has provided no evidence in support of his statement.  Nor has he presented

---

[2] Defendant also notes that he has suffered disciplinary infractions for refusing to spend time in the "yard."  [Doc. 120 at 5-6].  However, he has provided no evidence that he received any such infractions.  Nor has he presented any evidence suggesting that he has been treated differently than any other inmate would be treated under the circumstances.

7

any evidence that he needs medical attention. Therefore, he has not demonstrated, on this basis, exceptional and compelling circumstances that would justify his early release.

Fourth, Defendant contends that he has a job and housing secured upon his release, and that he plans to enroll in drug and mental health treatment. [Id. at 10]. To be sure, these are positive developments for Defendant, and they bode well for his successful reentry into society upon completion of his sentence. However, it is the Court's *expectation* that former inmates will work to integrate into society by finding appropriate housing and employment upon their release. And Defendant is already receiving both drug and mental health treatment while in BOP custody. [Doc. 120-1 at 19]. Therefore, there is nothing exceptional and compelling about Defendant's post-release plans that warrants compassionate release.

As his fifth argument, Defendant contends that he will care for his fiancée's wheelchair-bound mother if he is released. [Doc. 120 at 10]. As noted above, § 1B1.13 contemplates granting compassionate release where an inmate would be the only potential caregiver to an incapacitated family member, including his child, spouse, parent, or other immediate family member. See U.S.S.G. § 1B1.13(b)(3). As a primary matter,

nothing in the Guideline suggests that Defendant's fiancée's mother would qualify as an "other immediate family member." However, even if she so qualified, Defendant has not demonstrated that he is her only potential caregiver or that she needs his care. See, e.g., United States v. Brown, Crim. No. JKB-16-0427, 2022 WL 1664474, at *2-*3 (D. Md. May 25, 2022) (denying compassionate release because inmate failed to demonstrate that his father was incapable of self-care *and* that inmate was only possible caregiver). Indeed, Defendant has not at all explained why his fiancée cannot care for her own mother or explained that his fiancée's mother's condition is so incapacitating that she cannot care for herself. The Court will not infer that every person who uses a wheelchair is incapacitated within the meaning of § 1B1.13(b)(3). Accordingly, because Defendant has not demonstrated that his early release is the only way in which his fiancée's mother will obtain care that she needs, this argument, too, fails.

Sixth, although it is not entirely clear from his motion, Defendant seems to suggest that there have been intervening changes to 21 U.S.C. § 841 since he was convicted thereunder. [Doc. 120 at 11]. However, Defendant never explains what specific changes have been made to § 841. Nor does he even attempt to explain how any such changes warrant his

9

early release.  As such, Defendant has not demonstrated that his early release is warranted by any intervening changes to § 841.

As his seventh argument, Defendant states, without further elaboration, that the Court did not intend for his sentence to include "risk of severe illness or death brought on by a global pandemic." [Id. at 14]. Assuming Defendant meant to raise the COVID-19 pandemic specifically, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." See, e.g., United States v. Feiling, 453 F. Supp. 3d 832, 841 (E.D. Va. 2020) (quoting United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020)).  Defendant does not suggest that he is at any particularized risk of contracting a serious case of COVID-19 because of either his preexisting medical conditions or the conditions at Atwater. Accordingly, Defendant has not established that his early release is warranted because of COVID-19.

Eighth, Defendant argues that the "White House" is decriminalizing marijuana and "moving to pardon federal marijuana offenders." [Doc. 120 at 14].  However, Defendant's case involved methamphetamine, not marijuana, and methamphetamine is *very* different than marijuana. Additionally, mere *efforts* to decriminalize marijuana do not support

10

Case 1:09-cr-00047-MR   Document 123   Filed 07/02/24   Page 10 of 16

compassionate release motions—even in cases *involving marijuana*—because federal marijuana law has not yet changed.  See United States v. Correa, No. 3:09-CR-00052-FDW, 2023 WL 4919682, at *3 (W.D.N.C. Aug. 1, 2023).  Thus, because Defendant has not presented any evidence that the federal government now treats methamphetamine offenders any more leniently than it treated him at the time of his conviction, this argument is no basis for his early release.

For his ninth ground, Defendant states that his instant offense was non-violent.  [Doc. 120 at 15].  However, there is obviously nothing extraordinary or unusual about non-violent offenders being imprisoned.  Indeed, Congress has, rightly, seen fit to criminalize *many* non-violent activities, including fraud, tax evasion, and bribery, just to name a few.  The mere fact that offenders who commit these crimes do not use violence to accomplish their criminal ends does not somehow entitle them to avoid the prison terms prescribed by law for their inappropriate behavior.  Moreover, in fixing the penalties for non-violent crimes, Congress, in creating statutory ranges, the Sentencing Commission, in promulgating the Guidelines, and the Court, in fashioning an appropriate sentence, all account for whether a given crime was violent or non-violent.  Thus, this argument does not merit Defendant's early release.

Tenth, Defendant raises his rehabilitation. [Id. at 16-17, 19]. However, rather than explain his specific, individualized, efforts at rehabilitation, Defendant merely recites case law stating that the Court may consider rehabilitation as a factor in deciding a compassionate release motion, before reaching the bare conclusion that he is entitled to release based thereon. [Id.]. This is patently insufficient. Indeed, Defendant has not at all demonstrated that his rehabilitative efforts are in any way exceptional. To the contrary, while Defendant has completed some educational and treatment courses while incarcerated, there does not appear to be anything particularly remarkable about the volume or quality of his efforts. [Doc. 120-1 at 18-21]. Moreover, the Court's probation office advised that since beginning federal custody in 2019, Defendant has committed at least ten disciplinary infractions, several of which involve drug or alcohol usage, and a few of which involve violence, including assault with serious injury. Therefore, the Court concludes that Defendant's rehabilitative efforts are not exceptional or compelling. Accordingly, they do not justify his compassionate release request.

As his eleventh argument, Defendant states that he poses a low risk of recidivism because he originally received a 235-month sentence, feels deep remorse for his crime, and "his BOP record does not show that he is

12

Case 1:09-cr-00047-MR   Document 123   Filed 07/02/24   Page 12 of 16

violent or a threat to public safety." [Doc. 120 at 19]. However, "low risk of recidivism alone is not an extraordinary and compelling reason justifying a sentence reduction." United States v. Powell, Crim. No. 2:11-205, 2023 WL 5489030, at *4 (E.D. Va. Aug. 24, 2023); United States v. Sanders, Crim No. JKB-20-0168, 2024 WL 1014095, at *2 (D. Md. Mar. 8, 2024). Moreover, Defendant does not at all explain how the length of his original sentence, which has since been shortened, standing alone, suggests that he is unlikely to reoffend. Additionally, as explained above, Defendant has a fairly lengthy record of disciplinary infractions while with the BOP, including conduct similar to his offense conduct in this matter as well as violence. This record does not suggest that Defendant is remorseful for his crime, and it undercuts his claim that he is not violent. For these reasons, Defendant's arguments regarding his risk of recidivism are unavailing.

Finally, as his twelfth argument, Defendant recites case law providing that the Court could have ordered his federal sentence to run concurrently with his state sentences. [Doc. 120 at 21-22]. The Court has broad discretion in deciding whether a defendant's sentences should run concurrently or consecutively. See Setser v. United States, 556 U.S. 231, 235-37 (2012). For instance, here, the Court specifically concluded that Defendant's sentence in this matter should run consecutively to the 22 to

27 month sentence he received from the Lincoln County Superior Court on April 1, 2009, for felony abduction of children. [Docs. 60 at 17; 76 at 2]. This conclusion was reached because the two crimes were entirely distinct and because both were very serious. Thus, each offense warranted its own commensurately serious sanction. Nothing in Defendant's motion causes the Court to reconsider its decision mandating that his sentences run consecutively. Additionally, it is certainly not atypical for courts to impose consecutive sentences for unrelated offenses. See, e.g., United States v. Ruffin, 494 F. App'x 306, 307-08 (4th Cir. 2012). Thus, Defendant's argument does not amount to the sort of exceptional or compelling circumstances that would support his request for compassionate release.

In sum, the Court concludes that none of the grounds cited by Defendant, considered singly or in combination, constitute extraordinary and compelling reasons for his early release. Additionally, even if any of the grounds raised by Defendant could be considered an extraordinary and compelling reason for his release, the Court still must consider the § 3553(a) factors, as "applicable," as part of its analysis in determining whether a sentence reduction is warranted. See 18 U.S.C. § 3582(c)(1)(A); United States v. Chambliss, 948 F.3d 691, 694 (5th Cir. 2020).

Here, Defendant is only forty-four years old, and he has completed less than half of his sentence in this matter. He also has a very extensive criminal history, including, in addition to his present offense, multiple convictions for felony breaking or entering and felony larceny, felony possess stolen goods/property, felony allude arrest, felony larceny of motor vehicle, and felony abduction of children. Defendant is a criminal history category VI, with thirty-two criminal history points. [Doc. 60 at 9-18]. His present offense is also *very* serious, as Defendant pled guilty to conspiring with others to manufacture and possess with the intent to distribute a large quantity of methamphetamine, and multiple firearms were recovered at meth labs being operated by Defendant's co-conspirators. [Id. at 3-6]. Thus, after carefully reviewing the record, the Court concludes that Defendant's sentence adequately reflects the seriousness of his offense, provides just punishment, promotes respect for the law, and provides a significant deterrent to future criminal conduct. Defendant has not cited any factors that would cause the Court to reconsider and reduce his sentence.[3]

---

[3] As noted above, in portions of his motion, Defendant appears to seek relief pursuant to Amendment 821 of the Sentencing Guidelines, arguing that the two points that were added in calculating his criminal history category pursuant to U.S.S.G. § 4A1.1(e) would not apply if he were sentenced today. However, Amendment 821 does not impact the calculation of Defendant's criminal history category.

For these reasons, there are no "extraordinary and compelling" reasons" for Defendant's release and the relevant § 3553(a) factors continue to weigh in favor of his incarceration. Therefore, Defendant's motion for a reduction in sentence is denied.

**O R D E R**

**IT IS, THEREFORE, ORDERED** that Defendant's Motion for Compassionate Release/Sentence Reduction Under 18 U.S.C. § 3582 [Doc. 120] is hereby **DENIED.**

**IT IS SO ORDERED.**

Signed: July 1, 2024

Martin Reidinger
Chief United States District Judge